NOTICE
Decision filed 06/30/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241054-U

NO. 5-24-1054

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clark County. |
| | ) | |
| v. | ) | No. 24-CF-17 |
| | ) | |
| MICHAEL E. RODRIGUEZ, | ) | Honorable |
| | ) | Tracy W. Resch, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The defendant failed to establish that the unlawful possession of a weapon by a felon statute was facially unconstitutional. Any error by the circuit court in conducting the preliminary *Krankel* hearing was harmless.

¶ 2     Michael E. Rodriguez, the defendant, pled guilty to unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2022)), and he was sentenced to three years in the Illinois Department of Corrections (IDOC). The defendant appeals the September 18, 2024, decision by the circuit court denying the defendant's motion to withdraw the guilty plea and vacate the judgment, and argues that the UPWF statute is facially unconstitutional, following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Alternatively, the defendant argues that the circuit court erred by failing to conduct the requisite preliminary *Krankel* inquiry into claims of ineffective assistance of counsel raised in the

1

defendant's motion to withdraw his guilty plea and vacate judgment. See *People v. Krankel*, 102 Ill. 2d 181 (1984). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On February 17, 2024, the defendant had an active warrant for his arrest. After being recognized by law enforcement, he fled. Once apprehended, the officer found a pair of silver metal knuckles in the front pocket of the defendant's pants, and the defendant also allegedly possessed a hypodermic needle. The defendant was subsequently charged with UPWF (720 ILCS 5/24-1.1(a) (West 2022)); unlawful possession of hypodermic syringe or needle (720 ILCS 635/1 (West 2022)); and resisting a peace officer (720 ILCS 5/31-1(a)(1) (West 2022)).

¶ 5     A pretrial hearing was held on July 31, 2024. At the start of that hearing, the defendant asked to speak to the circuit court. The circuit court indicated that the defendant was represented by an attorney. Defense counsel then informed the circuit court that he did not have an opportunity to speak to the defendant before the hearing. The circuit court responded by taking a recess to allow the defendant the opportunity to consult with defense counsel. The defendant then stated, "I've already talked to him. He's not wanting to say what I'm wanting him to say. That's why I want to speak." Nevertheless, the circuit court provided the defendant with an opportunity to speak to defense counsel.

¶ 6     When the prehearing conference resumed, the circuit court addressed the defendant and asked if he had an adequate amount of time to speak to defense counsel. The defendant responded, "Yes, sir." The circuit court then allowed the defendant to make a statement to the court, and the defendant stated, "I've already talked to him," thanked the circuit court, and indicated that he no longer had anything for the circuit court to address. Defense counsel then provided an update to the circuit court, and the case was scheduled for another pretrial conference.

¶ 7    The defendant pleaded guilty to the UPWF charge during a subsequent hearing held on August 7, 2024. On that date, the defendant had to be transferred to the courthouse from where he was held in custody in Coles County. At the beginning of the hearing, defense counsel requested time to speak to the defendant. Because of a delay in the defendant's transport to the courthouse, defense counsel was not provided with time to speak to the defendant prior to the hearing, as planned. The circuit court, however, allowed defense counsel to speak to the defendant before proceeding with the hearing.

¶ 8    When the case was recalled, defense counsel informed the circuit court that the parties had reached an agreement. The State informed the circuit court that the defendant agreed to plead guilty to the UPWF charge with a three-year sentence in the IDOC, and mandatory supervised release of six months. In exchange for the defendant's guilty plea, a *nolle prosequi* would be entered on the two remaining charges.

¶ 9    Defense counsel conveyed to the circuit court that the defendant was concerned with whether the three-year sentence would be concurrent or consecutive to a pending case in Coles County. See People v. Rodriguez, No. 2024-CF-370 (Cir. Ct. Coles County). The State was not opposed to the circuit court issuing a sentence that would run concurrently to any future sentence issued in the unresolved Coles County case. The State commented, "Obviously that would be up to Coles County, though, whether it would be consecutive or concurrent." The circuit court indicated that it would impose a concurrent sentence but "whatever Coles County does is their decision."

¶ 10    The circuit court addressed the defendant on whether he understood the plea agreement and if his decision was made voluntarily. The defendant acknowledged his understanding of the agreement and consented to its terms before the State provided a factual basis for the plea and a

summary of the defendant's criminal history. The circuit court found that the defendant waived his right to trial, and the plea was voluntarily made. The defendant also signed a written acknowledgment of his intention to plead guilty in open court. The circuit court accepted the negotiated plea agreement, indicated that the defendant would be sentenced to three years in the IDOC for the UPWF conviction, and entered a *nolle prosequi* for the two remaining Clark County charges.

¶ 11     On August 20, 2024, defense counsel filed a motion to withdraw the defendant's guilty plea and to vacate the judgment after the defendant had received an offer from the Coles County State's Attorney in People v. Rodriguez, No. 2024-CF-370 (Cir. Ct. Coles County). The Coles County State's Attorney informed the defendant that his sentence may be consecutive to the three year UPWF sentence issued in Clark County. The motion to withdraw the guilty plea additionally included that the "defendant believes he received ineffective assistance of counsel, in that his attorney did not 'talk to him' about his case; the attorney did not 'pursue claims, such as a violation of the law because no video evidence exists of the encounter, and such as not demanding a dismissal because two officer reports were inconsistent,' and due to his belief that his counsel 'worked for the state.' "

¶ 12     The defendant's motion to withdraw guilty plea and vacate judgment was heard on September 18, 2024. At that time, the defendant indicated that People v. Rodriguez, No. 2024-CF-370 (Cir. Ct. Coles County) remained pending with an expected trial date of October 1, 2024. The defendant was then sworn in as a witness and defense counsel examined the defendant.

¶ 13     The defendant testified that he received an offer from the Coles County State's Attorney which included a sentence that would run consecutive to the defendant's UPWF sentence. Defense counsel then proceeded to question the defendant on his claims of ineffective assistance of counsel

4

against defense counsel. The defendant explained that the arresting officer in his case was being investigated for a shooting that occurred at the defendant's girlfriend's house. The defendant testified that defense counsel believed that the "police report didn't matter." The defendant further testified that,

> "[defense counsel] also stated that due to the two police reports having two different incident report numbers, that they didn't matter. Well, if one officer—if there's two—if there's two different arresting officers and each one make—make a separate police report, there is going to be two separate police report numbers. If I'm wrong, please correct me."

The defendant continued to testify that he disagreed with counsel on whether police reports written by different officers would have the same incident report number or two different incident report numbers. The defendant acknowledged that the conversation that he had with defense counsel regarding the issues with the police reports occurred before he pled guilty. Then the following transpired:

> "DEFENSE COUNSEL: Okay. You also indicated that your lawyer did not—myself—did not talk to you about the case. Is that your concern as well?
>
> DEFENDANT: Yes.
>
> DEFENSE COUNSEL: What is that—what do you mean by that?
>
> DEFENDANT: You didn't talk to me about the case.
>
> DEFENSE COUNSEL: You just referenced talking about the case."

Defense counsel continued his examination of the defendant who acknowledged that he had a conversation with defense counsel on August 2, 2024. The defendant also acknowledged that he had refused to speak with defense counsel on August 5, 2024, after defense counsel stated that the

police report regarding an open investigation on a shooting and the lack of video evidence were not relevant; and that defense counsel provided the defendant with a copy of a statute on the issue regarding the "dash cam" and "body cam" video evidence. These conversations between the defendant and defense counsel took place before the guilty plea was entered.

¶ 14    Defense counsel additionally asked the defendant, "Is there anything else—you stated you believed that by me being the public defender, I work for the State. How is that ineffective in your mind?" The defendant then explained that he did not understand how defense counsel had information on an open investigation. Defense counsel asked whether he had explained to the defendant that the information received was provided by the State. The defendant then claimed that he had a conversation with defense counsel regarding a shooting and that information was not included in the police report that he reviewed. Defense counsel concluded the examination of the defendant, and the circuit court did not ask any follow-up questions of the defendant. The circuit court also refrained from questioning defense counsel.

¶ 15    The circuit court, however, allowed the State to cross-examine the defendant. The State refrained from questioning the defendant on issues regarding ineffective assistance of counsel. The State acknowledged that it was going to limit its questions to the criminal case in Coles County regarding the defendant's motion to withdraw his plea agreement. The defendant confirmed that his criminal case in Coles County remained pending, there was no finding of guilt, and the defendant had not been sentenced. The only offer that the defendant received in the Coles County case would have resulted in a 12-year sentence to be served consecutively to the 3-year UPWF sentence. The defendant had not accepted the offer, and he had not made any counteroffers. The defendant additionally acknowledged that when he pled guilty to the UPWF charge, he understood that the Clark County State's Attorney had no control over the Coles County State's Attorney. The

6

State offered a transcript from the August 7, 2024, plea hearing, and the transcript was admitted into evidence.

¶ 16    The State then argued that the Coles County case remained pending and that the defendant had not been sentenced. Assuming the defendant was found guilty and sentenced, the State argued that under section 5-8-4(a)(i) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a)(i) (West 2024)), the defendant could receive a consecutive or a concurrent sentence. The defendant, at the time of sentencing, was aware that Clark County did not control the Coles County sentencing decisions. The State referred to the transcript of the plea hearing and identified that the defendant understood the agreement, the Clark County State's Attorney did not have any objection to a concurrent sentence, the sentenced imposed was not consecutive to any case, and that the defendant understood that the plea agreement did not prevent the Coles County circuit court from issuing a consecutive sentence in his pending criminal case.

¶ 17    The circuit court considered that the defendant mistakenly believed that he would receive a concurrent sentence in the pending Coles County case when he pled guilty to UPWF in Clark County. The circuit court found that the defendant's misapprehension was not based on the factual basis presented or on a misapprehension of the law, nor had the recited negotiated plea been misleading. Additionally, the circuit court found that the defendant "did not appear overwhelmed or overwrought" when he entered the plea agreement.

¶ 18    The defendant's claim of ineffective assistance of counsel and the nature of the charges were also considered by the circuit court. The circuit court found,

    "It's not a complicated charge. He was stopped after a chase because ***
    he had an outstanding warrant. He was a fugitive. He had metal knuckles in his

pocket. The police had a right to search a fugitive who was being taken into custody.

This is not a good scenario if [the defendant] expects his attorney to get him off."

The circuit court additionally considered that the negotiated agreement was not "unduly harsh" based on the defendant's extensive criminal history. Furthermore, the circuit court found that there was no aspect of the negotiated plea that the defendant had not understood when the plea was entered.

¶ 19     The defendant's motion to withdraw the plea agreement was denied. The circuit court found that the defendant failed to demonstrate sufficient grounds to permit the withdrawal of his guilty plea, and there was no showing that the defendant was convicted because of ineffective assistance by defense counsel. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21     On appeal, the defendant argues that the UPWF statute is facially unconstitutional as it violates his right to bear arms under the United States Constitution. The defendant additionally argues that the circuit court erred where it failed to conduct the requisite preliminary *Krankel* inquiry.

¶ 22                          A. Second Amendment Protections

¶ 23     The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "The United States Supreme Court has 'recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun' inside and outside the home 'for self-defense.' " *People v. Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *Bruen*, 597 U.S. at

8

8-9; and citing *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)).

¶ 24    The defendant, here, challenges the validity of section 24-1.1 of the Criminal Code of 2012, which provides, in pertinent part, as follows:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

"[M]etal knuckles or other knuckle weapon regardless of its composition" are included in the list of weapons provided under section 24-1. 720 ILCS 5/24-1(a)(1) (West 2022).

¶ 25    "[S]tatutes are presumed constitutional, and we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so." *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 25. "The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation." *Johnson*, 2015 IL App (1st) 133663, ¶ 25. A statute's constitutionality is a legal question reviewed *de novo*. *People v. Spears*, 2026 IL App (5th) 240625, ¶ 26.

¶ 26    "A constitutional challenge to a statute may be either facial or as applied." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 11. "A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, while an as-applied challenge depends on the particular facts and circumstances of the party." *Burns*, 2024 IL App (4th) 230428, ¶ 11. A defendant will not meet his burden if there is any scenario where a statute could be validly enforced in a facial constitutional challenge. *Johnson*, 2015 IL App (1st) 133663, ¶ 25. The defendant in this case only raises a facial challenge as to whether the UPWF statute is unconstitutional,

9

following the United States Supreme Court's decision in *Bruen*, 597 U.S. 1, and argues that metal knuckles are considered "arms" under the second amendment.

¶ 27    *Bruen* announced a two-part analysis for review of laws affecting the right to bear arms, and the standard for applying the second amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24.

Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 28    We considered the *Bruen* analysis in *People v. Smith*, 2025 IL App (5th) 230656, which agreed with the reasoning in federal and appellate court decisions which concluded that "felons are not protected under the plain text of the second amendment." *Smith*, 2025 IL App (5th) 230656, ¶ 25. *Smith* found that "a defendant who is in the process of committing a felony while possessing an operational firearm does not fall into the category of 'the people' protected by the second amendment." *Smith*, 2025 IL App (5th) 230656, ¶ 25. Furthermore, numerous other Illinois decisions have addressed whether felons are protected by the second amendment. See *Spears*, 2026 IL App (5th) 240625, ¶ 64; *People v. Lomax*, 2026 IL App (5th) 240889-U, ¶ 43; *People v. Arrington*, 2025 IL App (5th) 230344-U, ¶ 43; *People v. Honorable*, 2025 IL App (5th) 220743-U, ¶ 30; *People v. Hudson*, 2025 IL App (5th) 231140-U, ¶ 19; *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 22; *People v. McTizic*, 2025 IL App (1st) 240467-U, ¶¶ 8-13; *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 20; *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 85, 89; *People*

10

*v. Thomas*, 2024 IL App (4th) 240315-U, ¶¶ 23-24; and *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-22.

¶ 29    The Fifth District case, *People v. Stephens*, 2024 IL App (5th) 220828, followed the reasoning in a federal court decision in *United States v. Ware*, 673 F. Supp. 3d 947, 956 (S.D. Ill. 2023), and concluded that the defendant fell "into the category of 'the people' protected by the second amendment," regardless of his status as a felon. *Stephens*, 2024 IL App (5th) 220828, ¶ 33. *Stephens* nevertheless found section 24-1.1(a) to be facially constitutional under the second amendment where "the State has met its burden of showing that section 24-1.1(a) is consistent with this nation's historical tradition of firearm regulation." *Stephens*, 2024 IL App (5th) 220828, ¶ 39. We respectfully disagree with *Stephens*'s approach and follow the reasoning addressed in the *Smith* decision. See *Stephens*, 2024 IL App (5th) 220828, ¶ 33; *Smith*, 2025 IL App (5th) 230656, ¶ 25.

¶ 30    As such, we find that because of the defendant's criminal history, he is not included as part of "the people" protected under the second amendment. Because the defendant cannot claim the protection of the second amendment, the defendant's claim fails under the first part of *Bruen*'s test. We need not address the second step of the analysis in *Bruen* nor do we need to consider the defendant's argument that metal knuckles are presumptively protected under the second amendment. As such, the defendant has not demonstrated that the UPWF statute is facially unconstitutional.

¶ 31    The defendant additionally referenced the Illinois Constitution, but provided no argument on this issue. Article I, section 22, provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. Several courts have found that section 24-1.1 is a proper exercise of police power. *Burns*, 2024 IL

11

App (4th) 230428, ¶ 28 (citing *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 18, and *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 25). The defendant here fails to explain how or why the UPWF is facially unconstitutional under the Illinois Constitution. He makes no argument and cites no authority. "Points not argued are forfeited ***." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Thus, the defendant has forfeited any claim the UPWF statute violates the Illinois Constitution.

¶ 32                                     B. *Krankel*

¶ 33     We turn to whether the circuit court conducted an adequate preliminary *Krankel* inquiry into the defendant's claims of ineffective assistance of counsel. See *Krankel*, 102 Ill. 2d 181. The *Krankel* procedure allows the circuit court to fully consider ineffective assistance of counsel claims to limit issues on appeal. *People v. Roddis*, 2020 IL 124352, ¶ 34. A defendant is entitled to a *Krankel* inquiry when the defendant makes an explicit complaint of ineffective assistance of counsel. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 26.

¶ 34     Claims of ineffective assistance of counsel related to representation during a guilty plea, are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hatter*, 2021 IL 125981, ¶ 25. The defendant must show that counsel provided deficient performance which resulted in prejudice to the defense. *Hatter*, 2021 IL 125981, ¶ 25. To demonstrate prejudice in the context of a guilty plea proceeding, the defendant " 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Hatter*, 2021 IL 125981, ¶ 26 (quoting *People v. Brown*, 2017 IL 121681, ¶ 26). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 35    "*Krankel* is not triggered when counsel raises his own ineffectiveness." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 17. A *Krankel* inquiry is triggered, however, when defense counsel informs the circuit court about the defendant's claims of ineffective assistance of counsel, rather than admitting to his own ineffectiveness. *Rhodes*, 2019 IL App (4th) 160917, ¶ 17. Here, the circuit court addressed the defendant's ineffective assistance of counsel claims set forth in a written motion submitted by defense counsel on the defendant's behalf.

¶ 36    Under the common law procedure developed pursuant to *Krankel* and its progeny, the appointment of new counsel is not automatically required when a defendant makes a posttrial claim of ineffective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11. Rather, the circuit court must "conduct some type of inquiry into the underlying factual basis, if any" of a defendant's postplea claim of ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 79 (2003). The procedure to be followed at a preliminary *Krankel* inquiry "is somewhat flexible." *People v. Fields*, 2013 IL App (2d) 120945, ¶ 40. It is appropriate for the circuit court to consider its own knowledge of counsel's performance, discuss the allegations with the defendant, and to ask questions of trial counsel. *Fields*, 2013 IL App (2d) 120945, ¶ 39. "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78.

¶ 37    "[A] preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding." *People v. Jolly*, 2014 IL 117142, ¶ 38. The State should not be "an active participant during the preliminary inquiry." *Fields*, 2013 IL App (2d) 120945, ¶ 40. The State's participation at a preliminary *Krankel* proceeding, if any, should be "*de minimis*." *Jolly*, 2014 IL 117142, ¶ 38.

¶ 38    If the inquiry reveals possible neglect of the case by counsel, then the circuit court appoints new counsel to independently investigate the claims and represent the defendant at a separate

13

hearing. *Moore*, 207 Ill. 2d at 78. On the other hand, "[i]f the [circuit] court determines that the claim of ineffectiveness is spurious or pertains only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences." *Moore*, 207 Ill. 2d at 81. In that situation, new counsel would not be appointed. *Moore*, 207 Ill. 2d at 78. The defendant may still appeal his ineffective assistance of counsel claims, along with any other claims, if the circuit court denies his motion. *Moore*, 207 Ill. 2d at 81-82.

¶ 39 "Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *People v. Jackson*, 2020 IL 124112, ¶ 98. "However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98. The State additionally argues that even if the *Krankel* inquiry was inadequate, any error was harmless. See *Moore*, 207 Ill. 2d at 80-81 (the circuit court's failure to appoint new counsel to argue *pro se* claims of ineffective assistance of counsel can be harmless error). Whether the circuit court committed harmless error during a preliminary *Krankel* inquiry is reviewed *de novo*. *Jolly*, 2014 IL 117142, ¶ 28. "To establish that any error was harmless, the State must prove beyond a reasonable doubt that the result would have been the same absent the error." *Jackson*, 2020 IL 124112, ¶ 127.

¶ 40 The written motion submitted by defense counsel included language that the "defendant believes he received ineffective assistance of counsel" with quoted statements by the defendant. Defense counsel did not admit to possible neglect of the case. The ineffective assistance of counsel claims raised by the defendant include: (1) defense counsel did not communicate with the defendant; (2) defense counsel did not pursue an alleged violation of law against the State for not

14

producing video footage of the defendant's arrest; (3) defense counsel did not demand dismissal because of inconsistencies in two officer reports; and (4) defense counsel "worked for the State."

¶ 41   The circuit court did not directly address the defendant on his claims of ineffective assistance. Rather, the defendant only presented his claims through testimony elicited by defense counsel on the allegations against defense counsel. The defendant argues that because his claims were solicited by defense counsel, he was unable to adequately present his claims. Specifically, he claims that the record remains unclear on the issues of the lack of communication with defense counsel and the issue pertaining to inconsistent police reports. The defendant does not raise any additional claims of ineffective assistance of counsel on appeal that were not addressed by the circuit court. We also note that the State was present during the hearing to withdraw the guilty plea, and the State properly refrained from questioning the defendant on his ineffective assistance of counsel claims. The State was, at most, minimally involved in the *Krankel* inquiry portion of the motion hearing.

¶ 42   During a preliminary *Krankel* hearing, it is appropriate for the circuit court to consider its own knowledge of defense counsel's performance. On the issue of whether defense counsel communicated with the defendant, the circuit court had knowledge that defense counsel requested a recess during the July 31, 2024, pretrial conference to speak to the defendant. Defense counsel was also granted time to speak to the defendant on August 7, 2024, before the defendant entered into the plea agreement. The record indicates that the defendant informed the circuit court that he was provided with adequate time to speak to counsel.

¶ 43   During the September 18, 2024, hearing, the defendant indicated that he had been dissatisfied with the information received from defense counsel. The communication claim was more akin to disliking the information received from counsel rather than a failure to communicate

15

by defense counsel. The defendant's explanation of conversations that he had with defense counsel, coupled with the circuit court's knowledge of times that the defense counsel had consulted with the defendant, was sufficient to deny the defendant's claim, on the merits, regarding counsel's failure to communicate with the defendant.

¶ 44　　The defendant additionally claims that the record remains unclear on the issue concerning inconsistent police reports. The defendant explained during the September 18, 2024, hearing that the inconsistency in the police reports was in regard to the incident numbers on the police reports. The defendant was concerned with whether there should have been two separate police report numbers. The defendant acknowledged that he had spoken to defense counsel about this issue prior to his guilty plea. Defense counsel had also conferred with the defendant regarding the credibility of the police officer purportedly involved in an ongoing investigation related to a shooting incident at the residence of the defendant's girlfriend. The defendant was concerned that defense counsel did not find that investigation relevant and believed that defense counsel "worked for the State."

¶ 45　　Again, the defendant's testimony at the *Krankel* inquiry reveals that he had multiple conversations with defense counsel. The circuit court was also able to consider the merits of the defendant's claims based on its own knowledge of the case. The defendant's claim that defense counsel "worked for the State" had no merit where the circuit court had knowledge of defense counsel's position as a public defender. In light of the foregoing, we find no deficient performance by defense counsel.

¶ 46　　The record reveals that the circuit court considered that the defendant was unable to satisfy the prejudice prong under *Strickland*, where it summarized the factual basis of the conviction and stated, "This is not a good scenario if [the defendant] expects his attorney to get him off." A defendant asserting ineffective assistance after a guilty plea "must show that there is a reasonable

16

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Brown*, 2017 IL 121681, ¶ 26. For the purposes of a *Strickland* analysis, " '[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice.' " *Brown*, 2017 IL 121681, ¶ 47 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29). The defendant's claims do not demonstrate that he would have insisted on going to trial, and his motion does not state otherwise. Therefore, the defendant is unable to satisfy the prejudice prong of *Strickland*.

¶ 47    To the extent there was any error by the circuit court in allowing defense counsel to examine the defendant during the preliminary *Krankel* hearing on his claims of ineffective assistance of counsel, without further inquiry by the circuit court, said error was harmless. The record contains sufficient information to review the defendant's claims of ineffective assistance of counsel and to determine that the result would be the same had the preliminary *Krankel* hearing been conducted in a different manner.

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Clark County.

¶ 50    Affirmed.